**PROCTOR & GAMBLE DISTRIBUTING COMPANY, Appellant,**

v.

**Dorah VASSEUR, Appellee.**

Court of Appeals of Kentucky.

Jan. 28, 1955.

Rehearing Denied March 25, 1955.

Terrell, Schultzman & Hardy, Paducah, Lovett, Lovett & Lovett, Benton, for appellant.

Earl T. Osborne, Benton, for appellee.

STANLEY, Commissioner.

This suit was filed by Dorah Vasseur to recover damages from Proctor and Gamble Distributing Company for injuries to her arms and hands, alleged to have been suffered by using a soap product or detergent powder, sold and distributed by the defendant. In course of time the circuit court rendered default judgment against the defendant for its failure to answer certain interrogatories served upon it by the plaintiff, and impaneled a jury to assess the damages. The verdict and judgment are for $2,750. The company's appeal rests on grounds that the court abused a discretion in requiring it to answer certain of the interrogatories and in refusing to grant it further time in which to answer others. Civil Rules, 6.02, 26.02, 33 and 37.05. The case presents important questions of interpretation of the discovery provisions of the Rules of Civil Procedure in respect to the character of the interrogatories and of judicial discretion in directing answers and in applying the penalty.

On August 20, three weeks after filing the complaint, the plaintiff served 18 interrogatories upon the defendant. CR 33. By agreement, it was given until September 18 to answer. On the 17th the defendant filed answers, in whole or in part, to 16 of the interrogatories, but declined to answer two others on the ground of irrelevancy. On the same day the plaintiff moved the court to require complete answers. On October 9 the plaintiff filed six additional interrogatories. The defendant objected to answering them because the information or testimony sought was not reasonably calculated to lead to discovery of admissible evidence, or because it concerned privileged matter, that is, trade secrets.

On November 6 the court considered all the challenged interrogatories and ruled the defendant should answer certain of them in fifteen days, which carried the time to November 21. On the 18th the defendants asked for an enlargement of time to December 5. The reasons assigned were that the information was not in possession of the defendant but of another corporation, namely, Proctor and Gamble Company, and that while some of the information may have been made available to the defendant, it would be voluminous and difficult to assemble, requiring about "200 man hours of work" and physically impossible to do by November 21. The court overruled the motion except as to one interrogatory which called for "the name and address of each user of 'Cheer' who complained, the date the complaint was received, and the nature of each complaint." The defendant was given until December 5 to answer that one. But on November 27 the plaintiff served notice that on December 14 she would ask for default judgment, CR 37.05, because of the defendants' failure to answer the interrogatories. The record of the hearing on the motion shows that the court was of opinion the defendant was pursuing a course of delaying the trial of the case. It appears that at this hearing the defendant stood on its position that it should not or could not be required to reveal trade secrets. On December 14 the court entered a default judgment and a few days later impaneled a jury to fix the damages, which it did at $2,750. The appeal follows.

The case presents questions of obligation and of immunity with respect to answering the interrogatories of an adverse party litigant, and if obliged to answer, then whether there was an abuse of discretion in denying enlargement of time and in penalizing the defendant for refusing to make discovery.

Civil Rule 33 gives the right of a party to "serve upon any adverse party written interrogatories to be answered" separately and fully in writing under oath if the information "is available to the party." The Rule stipulates the time in which such response shall be made, but answers to interrogatories to which an objection is made shall be deferred until the objections are determined. Provision is made for an

enlargement or extension of time when seasonably requested for cause shown. CR 6.02.

The interrogatories may "relate to any matters which can be inquired into under Rule 26.02." The provisions of CR 26.02, so incorporated by reference, define the scope of the examination. The party may be called upon for information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * * including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

■ Rule 33 adopts the mechanics of the former equitable rule for obtaining discovery from an adverse party. Moore's Federal Practice, Sec. 33.02. See Tiller v. Cincinnati Discount Co., 270 Ky. 685, 110 S.W.2d 420. Our Code denied an action for pre-trial discovery, eo nomine, with one exception, Sec. 685. Since we no longer have suits in equity or actions at law as such but only civil actions, Rule 33 may be utilized in any law suit. It superseded the common law, and, of course, the provisions of our Civil Code of Practice as to discovery, and established an expanded and comprehensive system of pre-trial discovery. But in its application it would seem that the principles which guided courts of equity in these matters should afford some guidance in administering Rule 33.

We examine the particular interrogatories involved in the light of this outline.

I. Two of the unanswered interrogatories were:

(1) "Give name and address of all members of Board of Directors and officers of Proctor and Gamble Distributing Company and show which of these have interest in Proctor and Gamble Company either by holding stock, position on Board of Directors or other office or position with the Proctor and Gamble Company."

(2) "Does Proctor and Gamble Distributing Company purchase, distribute or otherwise handle the products of any company other than Proctor and Gamble Company? If so, show what percentage of total business of Proctor and Gamble Distributing Company is derived from Proctor and Gamble Company."

■ It seems to us these interrogatories called for information which, even if available to this defendant, is irrelevant to the subject matter of this case. The issue is whether this defendant had put on the market a product which had proximately caused the plaintiff's injury. It is a suit for damages. Nowhere in the pleadings is there a suggestion of any relationship between the two companies mentioned. The purpose of the inquiry seems to have been to learn whether or not this defendant was but the alter ego or distributing agency of another corporation. The information might become important if judgment should be obtained and prove to be noncollectable from this defendant, but we see no relevancy "to the subject matter involved in the pending action." We think, therefore, the court erroneously required answers to these two interrogatories.

II. In a different category are these questions:

(1) "Have you been sued by any other user of 'Cheer' washing powders in any court in the United States? If so, give name of parties, court in which suit was brought, name and address of attorneys representing injured persons."

(2) "Have you received complaints from the users of 'Cheer' washing powder prior to the date of the filing of this action, if so, list the names and address of all persons from whom such correspondence has been received along

with the date same was received with a short summary of the contents of each piece of correspondence."

The trial court had previously ruled the defendant was not required to answer an interrogatory as to whether it had received complaints from users of their product and, if any, to file the complaints in their original form.

The appellee contends the information sought would reveal whether or not the defendant had or should have had prior knowledge of the dangerous character of its product alleged to have caused her injury. She argues that it is within the terms of CR 26.02 as it relates to the "existence" of "other tangible things" relevant to the subject matter of her case.

■ The rules in relation to discovery are indeed broad. It has been said that the way for "fishing expeditions" has been opened. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 392, 91 L.Ed. 451. But that opinion says "discovery, like all matters of procedure, has ultimate and necessary boundaries." Whatever the complaints—well founded or baseless, or involving persons of various allergies or sensitiveness, or different circumstances and conditions—they have no relevancy to the merits of the case at bar, nor do the records of other suits based upon such complaints. We do not construe the rule as being so broad and unlimited in range as to reasonably require discovery where there are so many divergent and immaterial elements and factors, which, of necessity, must appear in other complaints and litigation.

■ III. The defendant answered an interrogatory stating that Proctor and Gamble Company had conducted experiments calculated to determine the physical effects that the product had upon users of it. Coupled to that part of the interrogatory was the demand that the defendant "file all data that you have concerning these experiments." The court did not require the filing of detailed data but ruled the defendant should state "what the physical effects of such experiments were." The

defendant did not claim the information was not available to it. The response was that the data "is very voluminous" and entailed much work and was not in the defendant's possession but in the possession of the Proctor and Gamble Company. Fifteen days were given for response. Motion for fifteen days further time was overruled. We are of opinion that in the absence of a showing of nonavailability of the results of the experiments, the court's ruling on this question was proper although further time might well have been granted.

IV. In response to an interrogatory, the defendant gave the chemical contents of its product but respectfully declined "to disclose the exact proportions or percentages of these ingredients, the same being a trade secret." Another inquiry was whether the chemical content had been changed since it was first manufactured and if so, what the changes were. The defendant answered that the content had not been changed except to a more pleasing perfume and "a very small amount of a nonreactive blue pigment was added to give it a blue color." The court ruled that the percentage that each ingredient bore to the total product need not be disclosed "unless it shall be shown by the evidence that the use of a large proportion of any one of the ingredients used in the manufacture of the soap powder 'Cheer' would have an injurious effect upon the skin of its users, in which event the defendant shall be required to state the percentage of such ingredient."

The right to discovery and inspection of matters which constitute trade secrets and the corresponding right to maintain them, or, in some instances, to safeguard them, present difficult questions of definition and of limitation on the court's discretion. 17 Am.Jur., Discovery and Inspection, Suppl. Sec. 205; Annotations, 17 A.L.R.2d 383, op. cit. 404; Moore's Federal Practice, Sec. 26.22(3); 30.12. In the instant case the court did not require present disclosure. It will be time enough to review any definite ruling when it is made.

■ We cannot concur in the rulings of the trial court requiring answers to the

foregoing interrogatories which are of major importance. Nor can we concur in his view that the delay in conforming to the demands of the plaintiff for answers to others within the time allowed manifested a wilful refusal. It seems to us good faith and an honest effort were being made, insofar as possible, to answer the interrogatories except such as the ·defendant contended it should not be required to answer.

This conclusion takes the ground from under the judgment rendered as by default under the provisions of CR 37.05. This section is construed in Armstrong v. Biggs, an opinion delivered today, reversing a judgment rendered as by default against defendants in an action for not having appeared at the time and place designated to give their oral depositions.

The judgment is reversed.